UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                                )
IRVING "ROCKY" JOHNSON,          )
                                )
        Plaintiff,               )
                                )
    v.                           )   C.A. No. 23-338 WES
                                )
TOWN OF CHARLESTOWN, by and      )
through its Treasurer, GAIL      )
WILCOX; and DAVID WESTERVELT,    )
alias, individually and in his   )
official capacity as a Charlestown )
police officer; and EARL STANTON, )
alias,                           )
                                )
        Defendants.              )
_____)
```

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, District Judge.

Plaintiff Irving "Rocky" Johnson, a member of the Narragansett Indian Tribe ("Tribe"), filed a complaint against Defendants the Town of Charlestown, by and through its Treasurer, Gail Wilcox, David Westervelt, an officer of the Charlestown Police Department, and Earl Stanton.[1]  See Compl., ECF No. 1.  In his Complaint, Johnson brings constitutional claims pursuant to 42

---

[1] Defendant Stanton was voluntarily dismissed from the case. Notice Voluntary Dismissal, ECF No. 7.

U.S.C. § 1983,[2] claims under the Rhode Island Constitution,[3] and claims under Rhode Island common law.[4]  See id. ¶¶ 97-110.  In their motion, Defendants seek to dismiss the case because the Complaint fails to state a claim on which relief can be granted.

According to the Complaint (which the Court takes as true for the purpose of this motion), Johnson is an "activist" who built a hydroponic greenhouse on tribal land.  Id. ¶¶ 11-12, 19-24.  Internal differences within the Tribe led it to turn against Johnson's greenhouse and engage in efforts to impede its operation.  Id. ¶¶ 25-45.  Those disagreements came to a head on July 12, 2020, when members of the Tribe ordered Johnson and his supporters to leave the greenhouse.  Id. ¶¶ 46-51.  Defendants were present when this encounter took place.  Id. ¶ 50.  Subsequently, members of the Tribe conspired with the Charlestown Police to have Johnson arrested.  Id. ¶¶ 52-72.  Johnson surrendered himself on August 20, 2020, after Defendants issued an arrest warrant for his actions

---

[2] Johnson alleges claims for retaliatory arrest in violation of the First Amendment (Count I), false arrest and false imprisonment in violation of the Fourth Amendment (Count III), and malicious prosecution in violation of the Fourth Amendment (Count VI).  See Compl. ¶¶ 97-98, 101-02, 107-08, ECF No. 1.

[3] Johnson asserts claims for retaliatory arrest in violation of Article 1, Section 21 of the Rhode Island Constitution (Count II) and false arrest and false imprisonment in violation of Article 1, Section 6 of the Rhode Island Constitution (Count IV).  See Compl. ¶¶ 99-100, 103-04.

[4] Johnson alleges tort claims for false arrest and false imprisonment (Count V), and malicious prosecution (Count VII).  See Compl. ¶¶ 105-06, 109-10.

on July 12, 2020.  Id. ¶¶ 67-71.  A Washington County Superior Court jury convicted Johnson of trespassing and vandalism.  Id. ¶ 80.

Johnson alleges that his arrest and prosecution are tainted because of Defendants' "animosity toward [Johnson] as a political dissident."  Id. ¶¶ 69, 92.  This animosity caused Defendants to arrest Johnson without conducting a proper investigation or substantiating the criminal allegations against him.  Id. ¶¶ 2-4, 64-70, 82-94.  Johnson's conviction is currently on appeal before the Rhode Island Supreme Court.  Id. ¶¶ 80-81; see State v. Johnson, SU-2023-0099-CA (R.I. Sup. Ct.).  Johnson prays for declaratory and monetary relief.  Compl. 22.

Defendants Town of Charlestown and Westervelt move to dismiss under Federal Rule of Civil Procedure 12(b)(6) arguing that his constitutional and state tort claims are precluded under Heck v. Humphrey, 512 U.S. 477 (1994), and that his claims under the Rhode Island Constitution are not cognizable as implied causes of action.  See Defs.' Mem. Supp. Mot. Dismiss ("Defs.' Mem."), ECF No. 10-1. For the reasons below, Defendants' Motion to Dismiss, ECF No. 10, is GRANTED IN PART and DENIED IN PART.

## I.  STANDARD OF REVIEW

A complaint must state a claim that is "plausible on its face" to survive a motion to dismiss under Rule 12(b)(6) and proceed to discovery.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555 (citations and footnote omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556).

When determining whether a complaint satisfies the plausibility standard, a court must assume the truth of all well-pleaded facts and "give the plaintiff the benefit of all reasonable inferences." Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007). This presumption, however, does not extend to bare legal conclusions. Iqbal, 556 U.S. at 678-79. Indeed, "a plaintiff must offer 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation,' in order to claim a 'plausible entitlement to relief.'" Sanchez v. Pereira-Castillo, 590 F.3d 31, 48 (1st Cir. 2009) (quoting Iqabl, 556 U.S. at 678 then Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95-96 (1st Cir. 2007)). If the well-pleaded facts only offer an inference of liability, but cannot reach the level of supporting a plausible claim, the Court must dismiss the complaint. Iqbal, 556 U.S. at 679.

## II.  DISCUSSION

### A. Johnson's Claims Under the Rhode Island Constitution Are Not Cognizable Causes of Action

Johnson brings direct causes of action under Article 1, Sections Six and Twenty-One of the Rhode Island Constitution.  The two sections guarantee a right to be free from unreasonable searches and seizures[5] and to freedom of speech,[6] respectively.  R.I. Const. art. 1, §§ 6, 21.  Johnson's claims are analogous to a federal Bivens claim.  In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, the U.S. Supreme Court held that a plaintiff could bring claims against federal actors under the Fourth Amendment of the U.S. Constitution itself.  403 U.S. 388, 397 (1971).  Over the following decade, the Supreme Court recognized other implied rights of action under the U.S. Constitution.  See, e.g., Carlson v. Green, 446 U.S. 14, 16-18 (1980) (authorizing a Bivens claim under the Eighth Amendment for

---

[5] Article 1, Section 6 of the Rhode Island Constitution provides: "The right of the people to be secure in their persons, papers and possessions, against unreasonable searches and seizures, shall not be violated; and no warrant shall issue, but on complaint in writing, upon probable cause, supported by oath or affirmation, and describing as nearly as may be, the place to be searched and the persons or things to be seized."

[6] Article 1, Section 21 of the Rhode Island Constitution provides: "The citizens have a right in a peaceable manner to assemble for their common good, and to apply to those invested with the powers of government, for redress of grievances, or for other purposes, by petition, address, or remonstrance.  No law abridging the freedom of speech shall be enacted."

deliberate indifference); Davis v. Passman, 442 U.S. 228, 243-44 (1979) (recognizing an implied right of action under Fifth Amendment Due Process). Not since Carlson, however, has the Supreme Court recognized an implied cause of action under the U.S. Constitution. See Ricci v. Rhode Island, No. 1:20-cv-00543-MSM-PAS, 2023 WL 4686025, at *10-11 (D.R.I. July 21, 2023) (providing a brief overview of the history of Bivens claims and their status today).

Much like the U.S. Supreme Court, the Rhode Island Supreme Court has been reluctant to find implied causes of action under the Rhode Island Constitution. It has outlined a threshold question to determine whether a state constitutional provision is self-executing as a private cause of action. Courts must ask: does the provision provide "a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed be enforced . . . [or does] it merely indicate[] principles, without laying down rules by means of which those principles may be given the force of law[?]" Bandoni v. State, 715 A.2d 580, 586, 600-01 (R.I. 1998) (quoting Davis v. Burke, 179 U.S. 399, 403 (1900)) (concluding that Article 1, Section 23 of the state constitution does not create a private cause of action). If the language of the provision does not identify "the means for [a right's] enjoyment and protection," the answer under Bandoni is likely the latter. Id. at 587 (emphasis omitted) (quoting Shields

v. Gerhart, 658 A.2d 924, 928 (Vt. 1995)).  Provisions that outline "aspirational language," and do not provide a "workable rule of law," require "legislative action . . . to effectuate th[e] provision's goals," not an implied cause of action.  Smiler v. Napolitano, 911 A.2d 1035, 1039 n.5 (R.I. 2006).  Since Bandoni, the Rhode Island Supreme Court has "consistently refused to hold that constitutional provisions create a private cause of action without legislative action."[7]  Hagopian v. City of Newport, No. 18-283 WES, 2021 WL 4742701, at *1 n.1 (D.R.I. Oct. 12, 2021).

Johnson does not respond to Defendants' argument that his claims under the state constitution are not cognizable.  See Defs.' Mem. 7-10.  The Court will construe Johnson's silence as a waiver.  See In re Compact Disc Minimum Advertised Price Antitrust Litig., 456 F. Supp. 2d 131, 152 (D. Me. 2006) ("A party's failure to oppose specific arguments in a motion to dismiss results in waiver

---

[7] See, e.g., Doe v. Brown Univ., 253 A.3d 389, 398-401 (R.I. 2021) (concluding Article 1, Section 2's antidiscrimination clause does not create an implied cause of action); A.F. Lusi Constr., Inc. v. R.I. Convention Ctr. Auth., 934 A.2d 791, 797-98 (R.I. 2007) (same for Article 3, Section 7); Smiler v. Napolitano, 911 A.2d 1035, 1039 n.5 (R.I. 2006) (same for Article 1, Section 5); Folan v. State/Dep't of Child., Youth, & Fams., 723 A.2d 287, 292 (R.I. 1999) (same for Article 1, Section 2's antidiscrimination clause); see also Felkner v. R.I. Coll., 203 A.3d 433, 447 (R.I. 2019) (reviewing the petitioner's claim that he was deprived his right of freedom of speech and expression under the Rhode Island Civil Rights Act and not as an implied right of action under Article 1, Section 21).

of those issues.").

Nevertheless, the provisions on which Johnson relies "merely espouse[] general principles" and cannot be interpreted as articulating a means to enforce and enjoy those rights contained therein. Bandoni, 715 A.2d at 587; see Ricci, 2023 WL 4686025, at *11 (concluding that Article 1, Section 6 of the Rhode Island Constitution does not create a private cause of action). Considering the Rhode Island Supreme Court's silence on whether these provisions create private causes of action, this Court will not tread new ground here. Accordingly, Defendants' Motion with respect to Counts II and IV is granted.

## B. **Heck** Bars Johnson's Constitutional Claims Under § 1983 and his State-Law Claims

Defendants maintain that Johnson's claims constitute a collateral attack on the validity of his criminal conviction. Defs.' Mem. 3-5. Thus, according to Defendants, many of Johnson's claims are precluded under Heck and should be dismissed. Id.

The Heck bar applies to claims that "call into question the lawfulness of . . . confinement." Heck, 512 U.S. at 483; Thore v. Howe, 466 F.3d 173, 179 (1st Cir. 2006). To get around the Heck bar and "recover damages for [an] allegedly unconstitutional conviction or imprisonment," the plaintiff

> must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal

8

court's issuance of a writ of habeas corpus.

Heck, 512 U.S. at 486-87; Figueroa v. Rivera, 147 F.3d 77, 80 (1st Cir. 1998); see Laurence v. Sollitto, 788 A.2d 455, 458-59 (R.I. 2002) (adopting Heck and holding that a "conviction must first be overturned on appeal or in collateral proceedings" before a plaintiff can bring a § 1983 claim).

Each of Johnson's claims – false arrest and false imprisonment, retaliatory arrest, and malicious prosecution – impugn the integrity of his criminal conviction because they attack the basis of his arrest.

1. False Arrest (Count III)

Starting with his false arrest and false imprisonment claim, Johnson alleges that Defendants wrongfully arrested him because the Charleston Police did not have probable cause to do so. Compl. ¶¶ 4, 64, 82, 93. To prove a false arrest and false imprisonment claim, the plaintiff must prove that the arresting officer lacked probable cause. Evariste v. City of Boston, CV 18-12-597-FDS, 2020 WL 1332835, at *3-4 (D. Mass. Mar. 23, 2020). Such an inquiry is objective and requires the plaintiff to prove that the arresting officer acted unreasonably in believing that there was a probability that the arrestee committed a crime. Holder v. Town of Sandown, 585 F.3d 500, 504 (1st Cir. 2009); Ward v. Petow, No. 18-496-JJM-PAS, 2020 WL 1929125, at *6 (D.R.I. Mar. 21, 2020).

Heck applies to Johnson's false arrest and false imprisonment

claim because proving that Defendants did not have probable cause at the time of his arrest would necessarily imply that the resulting conviction was invalid. See Evariste, 2020 WL 1332835, at *3-4 (dismissing § 1983 false arrest claim because proving it would require a finding that the officer had "insufficient evidence" to arrest the plaintiff for the crime of which he was convicted); Cabot v. Lewis, 241 F. Supp. 3d 239, 254-55 (D. Mass. 2017) (reasoning that proving a false arrest claim would require the plaintiff "to negate an element of the offense for which he was arrested").    Therefore, Johnson's false arrest and false imprisonment claim is barred under Heck.

2. Retaliatory Imprisonment (Count I)

A retaliatory arrest claim under the First Amendment imposes liability on "'government officials [who] subject[] an individual to retaliatory actions' for engaging in protected speech." Nieves v. Bartlett, 139 S. Ct. 1715, 1722 (2019) (quoting Hartman v. Moore, 547 U.S. 250, 256 (2006)). "If an official takes adverse action against someone based on that forbidden motive, and 'non-retaliatory grounds are in fact insufficient to provoke the adverse consequences,' the injured person may generally seek relief by bringing a First Amendment claim." Id. (quoting Hartman, 547 U.S. at 256). In short, a prima facie claim for retaliatory arrest must show that the plaintiff "[1] engaged in a protected activity, [2] that the state took an adverse action against him, and [3]

10

that there is a causal link between the former and the latter." Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011).  A showing of probable cause will generally defeat a retaliatory arrest claim.[8] Nieves, 139 S. Ct. at 1726.

Johnson supports his retaliatory imprisonment claim by alleging that Defendants lacked probable cause at the time of arrest.  See Compl. ¶¶ 64, 93.  In his case-in-chief, Johnson must "plead and prove the absence of probable cause for the underlying criminal charge."  Nieves, 139 S. Ct. at 1723.  Thus, like his false arrest and false imprisonment claim, his retaliatory arrest claim is barred by Heck because a finding that officers did not have probable cause to arrest Johnson would necessarily imply that the resulting conviction is invalid.  See id. at 1726-27; Ward, 2020 WL 1929125, at *5; Cabot, 241 F. Supp. 3d at 256-57. Accordingly, Johnson's retaliatory arrest claim cannot proceed.

3. Malicious Prosecution (Count VI)

To succeed on a malicious prosecution claim under § 1983, a plaintiff must establish that "the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by

---

[8] The U.S. Supreme Court identified a narrow exception to the probable cause defense where the plaintiff submits "objective evidence" of situations where "officers have probable cause to make arrests, but typically exercise their discretion not to do so."  Nieves v. Bartlett, 139 S. Ct. 1715, 1727 (2019).  This "narrow qualification" is not alleged to have occurred here.  Id.

probable cause, and (3) criminal proceedings terminated in plaintiff's favor." Hernandez-Cuevas v. Taylor, 723 F.3d 91, 101 (1st Cir. 2013) (quoting Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012)). This claim is similarly covered by Heck because, as an element, Johnson must prove Defendants seized him without probable cause, which would axe the root of his conviction. Thus, Johnson's malicious prosecution claim cannot proceed given its implication on his conviction. See Heck, 512 U.S. at 484-86, 490 (affirming dismissal of plaintiff-petitioner's malicious prosecution claim because it would collaterally attack his conviction).

4. <u>State-Law Claims (Counts V and VII)</u>

The question of whether Johnson's claims under state common law can proceed is one that is unsettled. Defendants posit that, though Heck narrowly involved a § 1983 claim, its principles can be broadly applied to state-law claims. Defs.' Mem. 4-5. The First Circuit Court of Appeals has not addressed the question, which has led to diverging conclusions. Compare Cabot, 241 F. Supp. 3d at 257 (collecting cases), with Turkowitz v. Town of Provincetown, 914 F. Supp. 2d 62, 74-75 (D. Mass. 2012) (finding that Heck only bars "civil rights violations under § 1983" and not claims under state law); see also Figueroa, 147 F.3d at 83 (affirming the lower court's dismissal of state law claims on the alternative basis that it properly exercised pendant jurisdiction

rather than on the lower court's reasoning based on <u>Heck</u>).

The Court in <u>Cabot</u> applied <u>Heck</u> broadly and found it applied with "equal weight to state-law claims." <u>Cabot</u>, 241 F. Supp. 3d at 257. It reasoned that <u>Heck</u>'s purpose is to prevent collateral attacks on convictions "through the vehicle of a civil suit" and is based on the "hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." <u>Id.</u> (quoting <u>Heck</u>, 512 U.S. at 484, 486). Thus, under <u>Heck</u>'s reasoning, if a plaintiff's state law claim would "undermine the validity of the disposition of the criminal proceeding," it would logically follow that state-law claims are also barred. <u>Id.</u>; <u>see</u> <u>Mangual v. City of Worcester</u>, 285 F. Supp. 3d 465, 472 (D. Mass 2018) (following <u>Cabot</u> in applying <u>Heck</u> to the plaintiff's state law claims).

The court in <u>Turkowitz</u> did not explain its conclusion that <u>Heck</u> cannot extend to state-law claims and only applies to claims brought under § 1983. <u>See</u> 914 F. Supp. 2d at 74-75. Instead, it took its narrow reading of <u>Heck</u> as a given. <u>See</u> <u>id.</u>

This Court finds the reasoning of <u>Cabot</u> persuasive. It would be incongruous to bar constitutional claims under § 1983 but allow plaintiffs to proceed with state-law analogs that cause the same problems <u>Heck</u> aimed to prevent. The Supreme Court in <u>Heck</u> was mindful of the importance of "finality and consistency" in criminal proceedings and recognized that civil suits can act as powerful

13

mechanisms to thwart that goal.  <u>See</u> 512 U.S. at 484-85.  State-law claims with similar elements as their constitutional counterparts can operate as workarounds to <u>Heck</u> that undermine the benefits of criminal convictions.  <u>Cf.</u> <u>Swan v. Barbadoro</u>, 520 F.3d 24, 26 (1st Cir. 2008) (rejecting the plaintiff's attempt to skirt around problem posed by his dismissed <u>Bivens</u> claim by pleading RICO because, like his <u>Bivens</u> claim, it would impugn the validity of his conviction).  Consistent with <u>Heck</u>, the Court will review each of Johnson's state-law claims to examine the extent to which they undermine the validity of his conviction.

**<u>False Arrest and False Imprisonment (Count V)</u>.**  To establish a state-law cause of action for false arrest and false imprisonment, the plaintiff must show that "'(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, . . . (4) the confinement was not otherwise privileged'. . . ., [and] [5] [the defendant] detained [the plaintiff] without legal justification."  <u>Dyson v. City of Pawtucket</u>, 670 A.2d 233, 239 (R.I. 1996) (quoting <u>Moody v. McElroy</u>, 513 A.2d 5, 7 (R.I. 1986)).  Like its federal equivalent, "[t]he existence of probable cause is a complete defense to a false arrest claim."  <u>Horton v. Portsmouth Police Dep't</u>, 22 A.3d 1115, 1122 (R.I. 2011) (quoting <u>Henshaw v. Doherty</u>, 881 A.2d 909, 919 (R.I. 2005)); <u>see</u> <u>Beaudoin v. Levesque</u>, 697 A.2d 1065, 1067 (R.I. 1997).  Accordingly, a finding that the

officer lacked probable cause to arrest Johnson would undermine the validity of his conviction and is, thus, barred under Heck. See Cabot, 241 F. Supp. 3d at 257-59.

**Malicious Prosecution (Count VII).** Under Rhode Island law, the plaintiff must prove four elements to establish a claim of malicious prosecution:

> (1) the initiation of a criminal proceeding against the person who is now the tort plaintiff; (2) the termination of that previous proceeding in said person's favor; (3) a lack of probable cause on defendants' part when they initiated the criminal proceeding; and (4) the existence of malice on defendants' part.

Henshaw, 881 A.2d at 915. Like the constitutional claim, a state-law claim for malicious prosecution requires, as an element, that probable cause did not exist at the time criminal proceedings began, which, as has been explained, would undermine his conviction. See id. Moreover, malicious prosecution under state law already has the main holding of Heck built into it as an element - evidence that the "criminal proceeding [was] terminated in the plaintiff's favor." Bainum v. Coventry Police Dep't, 156 A.3d 418, 421-22 (R.I. 2017); see Hill v. R.I. State Emps.' Ret. Bd., 935 A.2d 608, 613 (R.I. 2007). Thus, the Court finds that his malicious prosecution claim is barred under Heck, see Cabot, 241 F. Supp. 3d at 260, but also finds that Johnson's claim fails as a matter of state law at this time, see Bainum, 156 A.3d at

421-22.[9]

Johnson has little to say about whether Heck applies to his claims.  He does not argue that his claims under § 1983 and state-law claims will not invalidate his conviction.  Instead, he argues that his criminal conviction is indeterminate because it is on

---

[9] The Court is aware of Polanco v. Lombardi where the Rhode Island Supreme Court declined to extend the reasoning and thrust of Heck to "causes of action which sound in state law negligence." 231 A.3d 139, 151-53 (R.I. 2020).  There, the court dealt with the application of the "Exoneration Rule" - the requirement that a tort plaintiff be found innocent of a past conviction in an appropriate post-conviction proceeding before he can bring a civil suit.  Id. at 149-50.  The plaintiffs – an exonerated criminal defendant and his family - contended that the Rule prevented them from bringing their claims for negligence against the City of Providence because they needed to obtain relief in a post-conviction proceeding before suing.  Id. at 142, 149-50.  Thus, under Heck, they were entitled to a tolling of the statute of limitations.  Id.

In addition to its holding concerning the relationship between constitutional claims and outstanding criminal convictions, the Supreme Court held in Heck that statute of limitations for a malicious prosecution claim does not begin to accrue until the conviction has been reversed.  Heck, 512 U.S. at 489-90.  Under the plaintiffs' theory, if the Court were to extend the principle in Heck to negligence claims, their filing would be timely.

The Rhode Island Supreme Court declined the invitation to extend Heck to negligence claims.  Polanco, 231 A.3d at 152.  It also declined to extend Heck "to all state claims."  Id.  But the opinion made an important caveat – its holding does not apply to claims brought under § 1983 and state-law malicious prosecution and false imprisonment claims.  Id. ("[W]e are not dealing with a claim pursuant to 42 U.S.C. § 1983, nor are we confronted in the instant case with an intentional claim such as one for malicious prosecution or for false imprisonment.").  Based on this, if presented with the opportunity, the Rhode Island Supreme Court would likely apply Heck's primary holding to Johnson's state-law claims and other claims that may undermine a conviction.

appeal and, thus, Heck does not apply.  Pl.'s Mem. Supp. Obj.

Defs.' Mot. Dismiss ("Pl.'s Mem.") 2-3, ECF No. 11-1.  He suggests

that, because the conviction is pending appeal, it "is not final,"

and falls outside Heck's ambit.  Id. at 3.  Based on this, Johnson

urges the Court to deny Defendants' motion or, in the alternative,

stay the litigation until he exhausts his appeal.  Id. at 3-4.

Johnson's argument that Heck does not apply when a defendant's

conviction is on appeal has no basis in the law.  A lawsuit that

challenges a conviction cannot proceed unless and until he receives

a favorable termination, meaning his conviction is "reversed,

expunged, invalidated, or impugned by the grant of a writ of habeas

corpus."  Heck, 512 U.S. at 489; see Laurence, 788 A.2d at 458-59

(upholding dismissal under Heck where the defendant's criminal

conviction was pending on appeal).  Because Johnson's conviction

still stands while on appeal, Heck applies to his claims.

Johnson relies on Wallace v. Kato, 549 U.S. 384 (2007) to

support his argument that Heck does not apply here, but the case

is inapposite on that point.  See Pl.'s Mem. 2.  There, the Supreme

Court addressed whether the statute of limitations for a false

arrest claim begins to accrue where the prosecution dropped the

criminal charges after the conviction was reversed on appeal.

Wallace, 549 U.S. at 386-87.  It held that the statute of

limitations begins to accrue once the "legal process [is] initiated

against him" because the claim is for damages stemming from

detention without legal process. Id. at 387-92. The Supreme Court distinguished Wallace from Heck by pointing out that, at the time the false arrest claim began to accrue, there was no criminal conviction that the claim could impugn. Id. at 393. Consequently, because the statute of limitations for a false arrest claim begins to accrue at the time the legal process begins, lower courts are within their discretion, as is "common practice," "to stay the civil action until the criminal case or the likelihood of a criminal case is ended." Id. at 393-94.

The holding of Wallace better supports his alternative argument that the Court should stay the instant action. Without taking a position on the merits of Johnson's criminal appeal, the Court recognizes that the Rhode Island Supreme Court may reverse his conviction. If that happens, Heck will no longer serve as a barrier to Johnson's lawsuit. If the Court were to dismiss the action, and the Rhode Island Supreme Court then reverses his conviction, Johnson's claims may lapse under the statute of limitations. See Wallace, 549 U.S. at 394; Manning v. Tefft, 839 F. Supp. 126, 128 (D.R.I. 1994) ("[A] federal suit for damages under § 1983 must be stayed pending completion of a parallel criminal prosecution in state court if the validity of the state criminal charge is a necessary issue in the federal suit." (citing Guerro v. Mulhearn, 498 F.2d 1249, 1255 (1st Cir. 1974)).

Defendants did not file a reply to oppose Johnson's request.[10]

Other courts in this situation have stayed action until a direct appeal is exhausted.  See, e.g., Williams v. Frey, No. 2:21-cv-00111-JAW, 2022 WL 203085, at *5 (D. Me. Jan. 25, 2022); Crooker v. Burns, No. 06-30187, 2010 WL 3781877, at *5 (D. Mass. Sept. 21, 2010) (staying Heck-barred claims through the resolution of the criminal case pending against the plaintiff); see also Boudreau v. Petit, C.A. No. 17-301-WES-PAS 10-18, ECF No. 17 (D.R.I. Nov. 9, 2017), report and recommendation adopted, Order (Dec. 12, 2017), ECF No. 19.  The Court will do the same here.

---

[10] Because Johnson is seeking declaratory relief in this case, Younger v. Harris, 401 U.S. 37 (1971) also counsels for a stay because this Court does not have jurisdiction to interfere in a pending state criminal prosecution as long as the federal claims can be "raised and resolved somewhere in the state process." Maymó-Meléndez v. Álvarez-Ramírez, 364 F.3d 27, 36 (1st Cir. 2004); see Younger, 401 U.S. at 41 n.2, 54.  Moreover, the First Circuit also counsels abstention in § 1983 actions where the damages award sought would have "the same practical effect as a declaratory judgment: the federal court has produced a ruling on the merits that the federal plaintiff can then use to alter the state proceeding." Rossi v. Gemma, 489 F.3d 26, 37 (1st Cir. 2007).  On appeal, Johnson can argue, as he does here, that Defendants did not have probable cause to arrest him and failed to conduct a proper investigation.  See Compl. ¶¶ 4, 64-69, 93.  Thus, this Court should not inject itself by making determinations that the Rhode Island Supreme Court could decide.  See Younger, 401 U.S. at 43-44 (federal courts should abstain from interfering in state court proceedings "when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief"); Bey v. Meford Mass. State Police, No. 21-cv-306-JJM-PAS, 2021 WL 3636043, at *2-3 (D.R.I. Aug. 17, 2021).

## III.    CONCLUSION

For the reasons above, Defendants' Motion is GRANTED IN PART and DENIED IN PART.  It is granted with respect to Counts II and IV but is otherwise STAYED until Johnson has exhausted the direct appeal of his conviction.  See State v. Johnson, SU-2023-0099-CA (R.I. Sup. Ct.).  All for the reasons stated herein, if the conviction is upheld, Defendants may move to lift the stay and the motion will be granted; if the conviction is overturned, the motion will be denied


IT IS SO ORDERED.


_____
William E. Smith
District Judge
Date: March 28, 2024